Good afternoon, Your Honors. I'm Terrence Cox, representing the Vessel Interest in this case, and I should say I have no relation to Mr. Cox in the last case. He's fishing. I would like to reserve two minutes for my rebuttal, please. Okay. There is a single-focused issue in this case. Whether or not it's an abuse of discretion for a district court to issue a salvage award to Vessel Owner Interest that is less than any salvage award issued to Vessel Owner Interest in the history of this country, when compared to 150 years of reported salvage awards, unless, and the unless is the biggie, unless the district court points to facts or a fact that would justify that deviation and articulates the reasons or the reasoning that would warrant such a substantial deviation. And I believe the resounding answer to that question has got to be yes, that's an abuse of discretion. Now, the appellants readily concede that a district court in fashioning a salvage award has wide discretion or broad discretion. That's the language that's used in 150 years. I've got the following question. We've sent this case or read an earlier panel. Correct. We, in that sense, has sent this case back once to the district court, and we have what we have from the district court. And if we were to hold that it was an abuse of discretion by the district judge, what are we supposed to do, send it back to the district judge again, saying this is an abuse of discretion? Does there come a point when we get to say, here's your number, let's everybody go home? It's precisely the key question. First of all, the prior panel, when they remanded and said there had been an abuse, said that the district court judge had relied upon an improper reason for issuing no award at all, which was that Crowley, as the vessel owner interest, had its own financial incentive to participate. Now we have a different situation where the district court has really offered no reason. It's not the wrong reason. It's no reason. And when you look at the ---- It stuck pretty close to the number it liked at the beginning. It certainly did. And the no reason and how it does constitute an abuse is best illustrated by looking at the two arguments of the appellees in their brief, and it vividly illustrates it. The first argument they make is that it was not an abuse of discretion because the district court judge followed kind of an invoice-based calculation approach to arrive at that 10 percent. In other words, what the vessel would have been making, it had never been deviated and summoned and called out and dispatched to undertake that risk. What amount of money would it have made just on an hourly, daily invoice basis doing its regular work? Well, first of all, that's no reward at all for risking the vessels and having them deviate and dispatch to the scene. That's just the same amount of money they would have made doing their daily business. So it's logically flawed. More importantly, in terms of why it's a clear abuse, if you look at the explicit wording in the Blackwall Supreme Court decision, 1869 Supreme Court decision, which is the progeny of all salvage law, and we quote it in page 5 of our reply brief, the Blackwall Supreme Court expressly disallows this kind of daily labor hour quantum merit approach for calculating a salvage award because that's not the appropriate way to do it. And as a result of the Supreme Court Blackwall decision saying that, when you look at Benedict, which is really the Bible of salvage awards and what's a fair award, they do not – Benedict does not allow, does not even mention that that's a permissible reason to deviate from the usual Blackwall standards and these percentage approaches. So the approach the judge used is on its face flawed. The second and really last argument that the appellees make is that the appellants, vessel owners throughout the history of the case, argued even at trial that this is a unique case in terms of the history of salvage law. That's absolutely true. I'm the one that said that at trial. I'm the one that tried the case, and it has always been unique. But it's standing the uniqueness completely on its head because every single one of the unique facts in this case mitigate in favor of a larger percentage award than the norm of the two-thirds of the vessel owner. And those facts are very clear that Crowley Marine Services is in the business of performing salvage. It's one of the things it does and markets itself for. It had vessels such as this vessel that performed the salvage work specifically equipped to do salvage work with gear, and it trained its personnel such as the personnel in this vessel to perform that salvage work. And that is in vivid contrast to your typical salvage claim you see over the last 150 years where you have a fishing boat or some other boat that's not at all expertise in salvage or equipped for salvage. It happens upon a situation where there's a vessel in distress in a storm or being beached or something like that and renders the services in that situation. So there is no logical basis and there is no legal basis that supports the reasoning of the district court in fashioning an award that's half, half the amount of any other award in the history of our nation. The last matter was re-added. Was there an evidentiary hearing to assist the court in setting up the award? No. There was an exchange of briefs going on. There was a telephone conference with the district court, and that was what he requested was an exchange of briefs. There was no evidentiary hearing. Actually, this goes to Judge Fletcher's question. Is all the evidence in as far as your side is concerned in the record that's now available to us? Yes. And to further respond, because I did not completely respond to your question. That's right. You didn't correct it to the end. In fashioning the award, here's what I think is appropriate. There should be another remand to the district court with this court noting that in the record before it, there do not appear to be, and I believe this sincerely, there do not appear to be any facts that would warrant a substantial deviation from the norm that the prior Ninth Circuit panel expressed, which is two-thirds or 66 percent to the vessel owner and the remainder to the crew, and inviting The next thing is the key thing that's fair to both sides. Inviting the district court to specify any facts and articulate the reasoning that would justify that type of substantial deviance, an extremely substantial deviance, from the normal award. And thirdly, in the event that the district court is unable to specify such facts or to provide the reasoning that would justify the substantial deviation from the norm, then for this court to instruct the district court, enter an award in favor of vessel interest somewhere in that range that's accepted in 150 years, which would be between 50 percent and two-thirds, 66 percent, in favor of the vessel owner, so as to not deviate with 150 years of precedent. I think that would be the appropriate remedy. And I think also that the beauty of that is it certainly does not take away from or overturn or challenge the prior Ninth Circuit panel, because the Ninth Circuit panel previously, in footnotes 6 and 7, handed graciously, with gracious communication to the district court a yardstick of saying, here's the norm, it's 66 percent to vessel owner interest. You go back and look at the record, and you decide what's right or wrong, and then we open the other side, and you've got two minutes. Robert Kraft, Jr. Good afternoon. I am Robert Kraft. I'm representing the plaintiff crew members. The law on salvage is clear, that salvage cases are fact-specific and have to be decided on the particular circumstances of the case. That is the law of the Ninth Circuit that is stated by the John Sage v. Zitko case, which is a Ninth Circuit case in 1949. It's clear that the cases have to be decided on the facts of the particular case. Are all the facts available in the record, then? All the facts are available in the record. And the first panel that decided this case sent it back for remand, and they asked and they gave both sides the opportunity on remand to put forward whatever facts and whatever evidence they wished to put forward to answer the questions that were posed by the Ninth Circuit on the first appeal. Now, I want to read to the Court portions of the Ninth Circuit appeal which I think are important, because what the Ninth Circuit in the first appeal talked about what should be considered by the district court on remand in fashioning an award to the vessel owner, quote, because salvage is a reward to those who undertake risk to save ships in distress, it has been considered a general, if not universal, rule that the reward is available not only to the salvers, but also to the owner of the salving vessel if there was a risk that the That's once they talk about the risk to the salving vessel. I have this in front of me. I'm not sure where you're reading from. Can you give me a little help if I can read along with you? I have the this is what I received from the Ninth Circuit. I don't have a page number. But what that was at, that's at 1088, 1089 of the opinion. This is the paragraph that begins B, but there is another difficulty. Yes. I'm with you. Okay. I'm with you. Under head note eight, it states, if the salving vessel is put at risk, the owner is normally entitled to a share of the award. Then it says at head note nine, if the salving vessel was put at risk in any way, then its owner was due some share of the award. So three separate times in the opinion, the Ninth Circuit states that there has to be some showing of risk to the vessel to be entitled to some portion of the award. But, counsel. The district court found that that was true, that there was risk because it made an award. Well, let me, before I address that, let me go on. The Ninth Circuit states lower in that paragraph that at the first trial, the evidence from the first trial, the record does not tell us either the value of the assets in the form of the sea voyager that were put at risk or the degree of risk to them in the salvage operation. So the evidence that came forward at the first trial, the Ninth Circuit felt that there was no evidence that showed any, the degree of risk to the vessel or its assets. Judge McGovern must have found there was some degree of risk because he did make an award to the vessel. But on remand, there was no evidence of any type put forward by Crowley to show risk to the vessel. But clearly. Did this Court request findings from Judge McGovern? I'm sorry? Did this Court request Judge McGovern to make findings? No. On the remand? No. But findings were made in the amended judgment. But there were no findings specific to risk. Well, I'm reading now from the last full paragraph. We remand the case to the district court with instructions to hold such further proceeding as the district court deems appropriate, comma, to make findings of fact on the sea voyager role in the salvage operations in the respects detailed above and otherwise, and finally to determine what portion of the award, if any, CMS should receive. Sounds like a direction to make findings of fact on these issues.  You're correct. What the Court did state, the Ninth Circuit did state at page 1090, it advised the district court to consider, quote, the value of the assets in the form of the sea voyager that were put at risk, or the degree of the risk to them in the salvage operation, or the reasonable value of the use of such assets for the period in which the salvage was effected. You know, this case seems to me unusual in one respect, and that is that the owner of the salvaged vessel and the owner of the salvaging vessel is the same. Correct. We don't always see that. In other respects, this seems to me a fairly standard salvaging operation. Is that also correct? That's also correct. In terms of the degree of distress, degree of risk, and so on. I mean, this is a pretty standard deal. The ship has a fire. It sort of sets the steering a little bit in a little bit of a circle. The other ship goes out, put a line on it, tow it in. Okay. That's a familiar story. It's different in this respect, is that this vessel is equipped specially to handle salvage operations. In the 150 years of salvage cases that we have, if you go back to the 19th century and the early 20th century, you have wooden vessels with non-mechanical equipment handling salvage operations. This vessel is specially equipped to handle salvage operations. I understand that. So there is no risk to that vessel in handling. I understand that this vessel is specially equipped, and many salvaging operations today are accomplished by seagoing tugs that are, in some respects, specially equipped for this. Sometimes it's your classic old fishing vessel, but very often it's a seagoing tug that actually is quite well equipped, maybe not quite as well equipped as this vessel. But this case strikes me as fairly ordinary, and I don't understand how Judge McGovern could have gone so far outside the boundaries of the conventional awards. Can you help me here? Unless you can help me, I'm going to say this is an abuse of discretion. My only question is, what do I do about it? Here's what the evidence showed, is that two of the crew members on this tug jumped across from one tug to another under six to eight foot seas, a four to six foot leap, and were in grave risk of danger. Another crew member was on the foredeck with equipment and tight lines where a line could snap and could cause him serious risk of injury. There was no evidence of risk to the vessels, and in apportioning the risk to the vessel and the crew members, Judge McGovern felt that the greatest risk was to the crew members and not to the vessel and the vessel owner. And he gave the greatest apportionment of the risks to the crew members and not to the vessel owner. He was the one who heard the evidence. He conducted the two-day trial, and he felt that the greatest risk was to the crew members and not to the vessel owner. I think that probably is right. That is to say, I do not think that the salvaging vessel was in serious danger. I do think that leap is a dangerous leap. I mean, that's the most dangerous part of the operation right there. I understand that. One other point is that these two crew members on the other vessel were in the bite of a line. I believe the testimony was for 15 or 20 minutes. And to be in the bite of a line, if a line snaps and you're in the bite of a line, you're killed or you're seriously maimed. So they're in serious danger not only jumping from the vessel, but to be standing in the bite of a tight line. So they're in serious danger. I missed this part of it. What do you mean in the bite of a tight line? Well, you have a line tied from one point to another. Yes. If the line snaps, the snapped line can come and strike you. And when a line snaps and it strikes you, it has the force of death with it. You're spelling bite, B-I-T-E, then? B-I-T-H-T. Bite is the loop. But I understand the danger you're now talking about. If it snaps, they're in trouble. I understand that. Is that unique to a salvage operation? But wouldn't that same danger be present anytime you're on a vessel? It's a maritime term. And anyone standing in the bite of a line on a vessel is in trouble. It's a seamen's rule. You don't stand in the bite of a line. These crew members had to be in the bite of the line to do this salvage operation. I see. But my point is, is that Judge McGovern was faced with the responsibility of apportioning the award between the vessel owner and these crew members. He apportioned. The vessel owner got a greater apportionment than two of the crew members. The vessel owner got a lesser apportionment than the other two of the crew members. And it was not an abuse of discretion. Thank you. Thank you. That was helpful. Two minutes. I'll be less than that. There were no findings on remand as directed. That's exactly right. This was not a small divergence from the usual award of the 66 percent range to vessel interest, even if you were to accept Mr. Craft's arguments. This was enormous. It was a leap from 66 percent down to 10 percent with no explanation on the record by the judge. What's your response to opposing counsel's argument that the vessel was never in danger, which takes it out of the realm of the other cases? Not true. And here are the reasons why. When you divert a tug that's in its usual service in protected waters to go out in the wet or to even get there and then arrive upon the scene, and the Blackwell factors are not only the degree of risk. There's that degree of risk to the vessel owner's equipment, vessel lines, everything, but also upon arrival the degree of skill exhibited not only by the crew but by the vessel owner's representatives. And the reason why nobody was killed, maimed, injured, and this all went so super smoothly. It went beautifully. It was a textbook salvage, smooth as you'll ever hear. And the reason was is because this captain was trained on how to do operations with retrievals, and he knew how, with his years of experience, to maneuver the vessels close together so all of these risks would be minimized. And also, these men had all been trained on this precise salvage-retrieval gear on how to use it, haul it out, rig it, use it safely, which all minimized the danger. All those factors mitigate in favor of the vessel owner interest, not in favor of the crew, because they're the ones that made this operation smooth as can be. So all the Blackwell factors have to be looked at, not just degree of risk, and there are no findings that did that. Okay. Thank you very much. Both sides. Thank you. Useful argument on both sides. Thank you very much. The case of Bartholomew v. Crowley Marine Services is now submitted for decision, and we are in adjournment until tomorrow morning. All rise. This court for this session stands adjourned. The case is submitted.
judges: Alarcon, W. Fletcher, Rawlinson